UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YONGJAE KIM,

                        Plaintiff,

        -v-                                                    CIVIL ACTION NO.: 18 Civ. 2500 (SLC)

                                                               **OPINION & ORDER**

JOSHUA ERIC STEWART AND CHP TRANS INC.,

                        Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.  INTRODUCTION

Yongjae Kim ("Kim") brings this action against defendants Joshua Eric Stewart ("Stewart")

and CHP Trans Inc. ("CHP") (Stewart and CHP together, "Defendants") for personal injuries he

sustained in an October 16, 2015 automobile accident (the "2015 Accident").   Before the Court

is Defendants' motion for summary judgment (the "Motion" (ECF No. 47)), in which they argue

that Kim has not satisfied the "serious injury" requirement of New York Insurance Law § 5102(d)

("§ 5102(d)").

For the reasons set forth below, Defendants' Motion is DENIED.

## II.  BACKGROUND

### A.  Factual Background[1]

On October 16, 2015, Kim was alone in his car and wearing his seatbelt at an intersection

in Brooklyn, New York.  (Def. 56.1 ¶¶ 4–5; Pl. 56.1 ¶¶ 4–5).  Stewart, driving a truck CHP owned,

---

[1] The Court summarizes the following facts from Defendants' Rule 56.1 Statement ("Def. 56.1"), Kim's Counter-Statement of Material Facts Pursuant to Rule 56.1 ("Pl. 56.1"), Defendants' Memorandum of Law in Support of

struck the rear of Kim's vehicle repeatedly, pushing it forward.  (Id.)  Following the collision, Kim was transported by ambulance to Woodhull Hospital and complained of pain to his neck, lower back, and right shoulder.  (Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7).  He was released from the emergency room after several hours.  (Id.)

Kim testified in a 2019 deposition in this action that he is self-employed and runs his own company, FIG Collective.  (ECF No. 47 at 74: 10–19).  According to Kim's testimony, following the 2015 Accident he was not able to work for three months, during which time he underwent medical treatment.  (Id. at 78:15–79:10).

### 1.  Post-Accident Medical Treatment

#### a.  Dr. Daniel Yoo – right shoulder treatment

Kim received orthopedic treatment from Dr. Daniel Yoo repeatedly between December 2015 and June 2020, including right shoulder surgery, as well as on at least one occasion in 2013, described infra at § II(A)(2).  (See ECF No. 52-3).  Following the accident, Kim was first seen on December 29, 2015, at which time he complained of sharp pain in his right shoulder with stiffness, weakness, and clicking.  (Id. at 5).  An examination of his right shoulder revealed painful abduction greater than 90 degrees and tenderness, and a December 16, 2015 right shoulder MRI showed a tear of the anterior labrum, tendinosis of the supraspinatus, and reactive subacromial-subdeltoid bursitis.  (Id. at 6).

On January 27, 2016, Kim underwent surgery at the Hackensack Surgery Center; the surgery involved a right shoulder arthroscopy, subacromial decompression, rotator cuff and

---

Summary Judgment, Kim's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion, and the exhibits attached to these filings.  (ECF Nos. 47, 52, 52-1–52-11, 55).

anterior labral debridement, and partial synovectomy.  (ECF No. 52-3 at 6).  Following the operation, Kim was diagnosed with right shoulder impingement syndrome, anterior labral tear, and partial tear along the subscapularis and synovitis in the rotator interval.  (Id.)

Kim followed up four times with Dr. Yoo in the months following his right shoulder surgery.  On January 28, 2016, the day after the surgery, Kim reported throbbing pain deep in his right shoulder and along the anterolateral and posterolateral aspects.  (ECF No. 52-3 at 7).  An examination showed recovery, and Kim was directed to continue therapy for range of motion and strengthening.  (Id.)  On February 9, 2016, Kim reported that he had begun gentle range of motion exercises and noted continued throbbing pain and weakness in the right shoulder.  (Id.)  An examination showed a smooth range of motion of the right shoulder without crepitus, and Kim was deemed to be making "gradual progress."  (Id.)

On March 26, 2016, Kim reported that, although he was continuing therapy, his shoulder pain was aggravated with shoulder extension and reaching behind his back and there were intermittent pain flare-ups.  (ECF No. 52-3 at 7).  An examination revealed some tenderness, although Kim was making "steady progress."  (Id. at 8).

Kim next followed up on May 3, 2016, and again reported intermittent pain flare-ups aggravated with external rotation and reaching behind his back, as well as fatigue in his right shoulder.  (ECF No. 52-3 at 8).  An examination revealed mild tenderness, and in Dr. Yoo's assessment, Kim's progress had slowed, evidenced by his residual pain and "notable" intermittent pain flare-ups.  (Id.)  Dr. Yoo discussed with Kim a possible cortisone injection, but Kim preferred to continue physical therapy for range of motion and strengthening.  (Id.)

Kim next followed up three years later, on May 9, 2019, reporting significant pain in his right shoulder aggravated by shoulder abduction, external rotation, and reaching behind his back, as well as residual weakness and stiffness.  (ECF No. 52-3 at 8).  Dr. Yoo examined his shoulder and noted some pain with abduction at greater than 90 degrees, as well as tenderness.  (Id. at 9).  Dr. Yoo recorded that Kim's forward shoulder elevation was to 143 degrees (180 degrees is normal), external rotation was to 37 degrees (90 degrees is normal), and internal rotation was to the level of L4 (normal is to T12-L2).  (Id. at 9, 29).

Accordingly, Dr. Yoo determined Kim's long-term prognosis was guarded, because he "appeared to have reached a plateau with residual pain and stiffness in the right shoulder." (ECF No. 52-3 at 9).  Dr. Yoo emphasized the importance of continued strengthening and range of motion exercises and deemed Kim a candidate for a cortisone injection.  (Id.)  Dr. Yoo determined that Kim:

> will be left with permanent residual of right shoulder pain increased with overhead and behind the back motions and stiffness with motion causing limitations in lifting, carrying, pushing, pulling etc. . . . [Kim] will require an undetermined amount of treatment throughout his lifetime to include; therapy, pain management, pain medication treatment, injections to include cortisone . . . Prognosis is guarded.  [Kim] will be prone to develop degenerative joint disease to the regions of injury over time also making motion more painful and difficult throughout [his] lifetime

(ECF No. 52-3 at 11).

Dr. Yoo concluded that Kim's injuries were causally related to the 2015 Accident, were permanent, and could not be completely resolved through medical treatment.  (ECF No. 52-3 at 11).

**b.** <u>Drs. Avraham Schweiger & Mehrdad Golzad – neurological assessment</u>

In May 2018, Kim received neurological testing and screening at the NYC Medical & Neurological Offices by Drs. Avraham Schweiger, PhD, and Mehrdad Golzad, MD.  (<u>See</u> ECF No. 52-8 at 5–11).  Kim reported symptoms including frequent moderate-to-severe headaches, dizziness, unsteadiness, neck and low back pain, "slowness in thinking," and difficulty remembering, concentrating, and making decisions.  (<u>Id.</u> at 5).  Dr. Schweiger reviewed Kim's medical records, including a May 23, 2018 MRI diffusion tensor imaging study by Dr. Karl Hussman, MD (<u>see id.</u> at 8–10), which indicated, in pertinent part, "significant bilateral cortical atrophy within the right medial orbitofrontal region most compatible with traumatic injury since this region is highly prone to contusion."  (<u>Id.</u> at 8).

A neurological examination revealed difficulties with tasks requiring sustained attention, concentration, and memory, and a cognitive assessment battery indicated cognitive decline.  (ECF No. 52-8 at 6, 8, 10).  Kim also exhibited speed of processing declines in several cognitive tests. (<u>Id.</u> at 10).  The examination also revealed that Kim's Headache Disability Index score constituted a severe disability.  (<u>Id.</u> at 6).  Dr. Schweiger diagnosed Kim with post-concussion syndrome with neuropsychological deficits secondary to brain trauma, and determined that "it is likely that [] Kim will experience cognitive symptoms for some time to come."  (<u>Id.</u> at 10).

After a review of Kim's medical history, including the neuroimaging results described above, Dr. Golzad concluded in a report dated August 19, 2019 that "as a result of the [2015 Accident] [Kim] has suffered mild traumatic brain injuries, with post-concussion syndrome, persistent headaches, mood disorder, memory and cognitive deficits."  (ECF No. 52-8 at 11).  Dr. Golzad noted that traumatic brain injury results in a progressive decline of brain cells and

neurodegeneration, causing "persistent and progressively worsening neurological and cognitive deficits[.]" (<u>Id.</u>)

### c.   <u>Dr. Alan Greenfield – Radiological Consultation</u>

On July 19, 2019, Dr. Greenfield authored reports interpreting MRIs of Kim's cervical spine, lumbar spine, and right shoulder.  (<u>See</u> ECF No. 47 at 167–68, 170–71, 173–74).  In pertinent part, Dr. Greenfield found that although Kim had degenerative disc disease and bulging discs to the cervical spine, he concluded that these findings were "chronic, longstanding and degenerative, developing over a period of years . . . [and] completely and entirely unrelated to the [2015 Accident]." (<u>Id.</u> at 167).  Dr. Greenfield also concluded that several disc herniations from C4 through C7, without specific signs of trauma, could not be attributed to the 2015 Accident.  (<u>Id.</u> at 168).  Similarly, Dr. Greenfield noted disc bulging and herniation to the lumbar spine, but deemed these findings degenerative and therefore did not attribute these injuries to the 2015 Accident.  (<u>Id.</u> at 170).

With respect to Kim's right shoulder, Dr. Greenfield first qualified his findings because the MRI under review was of "suboptimal resolution," with the image quality "degraded by low signal-to-noise," resulting in a "technically limited study[.]" (ECF No. 47 at 173).  Accordingly, Dr. Greenfield suggested that a labral tear was "highly unlikely," but noted that there were "technical limitations [to] this suboptimal exam." (<u>Id.</u> at 174).  Dr. Greenfield identified chronic tendinosis of the supraspinatus tendon with trace fluid in the adjacent subacromion/subdeltoid bursa, but concluded that these findings were "easily explainable on the basis of chronic and longstanding mechanical friction," and in conjunction with the absence of fracture, ligament or tendon tears,

concluded that Kim's shoulder injuries were all chronic, longstanding, and degenerative. (Id. at 173–74).

### d. **Examination by Dr. Jeffrey Passick**

On July 12, 2019, Dr. Jeffrey Passick, MD performed an independent orthopedic examination of Kim. (ECF No. 47 at 176). Kim reported not receiving ongoing medical treatment or taking any medication. (Id. at 181). Dr. Passick examined Kim's right shoulder and found no tenderness, effusion, or crepitus. (Id. at 180). The range of motion of Kim's right shoulder, cervical spine and lumbar spine were measured and found to be normal in all respects. (Id. at 179–80). Dr. Passick determined that Kim had no orthopedic disability, because his cervical spine strain and lumbar spine strain were resolved and his right shoulder strain had recovered following surgery. (Id. at 180).

### 2. **Prior Accident**

On August 14, 2013, Kim was involved in a car accident in which the vehicle he was driving was struck from the right side (the "2013 Accident"). (ECF No. 47 at 160). Kim did not go to the hospital or seek medical treatment until a week later. (Id.) On August 21, 2013, Kim was examined by Dr. Taegyun Kim, MD for complaints of neck pain with right arm numbness, right shoulder and ankle pain and low back pain radiating to the right leg. (Id.) Following an orthopedic examination, Dr. Kim recorded a clinical impression of a cervical strain/sprain, shoulder pain, lumbar sprain/strain, ankle pain, lumbago and cervicalgia. (Id. at 162). Dr. Kim recommended MRIs of the right shoulder and right ankle, physical therapy, and orthopedic follow ups. (Id.)

Kim followed up with Dr. Kim on September 25, 2013. (ECF No. 47 at 164). Dr. Kim reviewed the right shoulder MRI and determined there was joint effusion "possibly due to

trauma" and tendinitis of the biceps tendon.  (Id.)  Kim reported that his neck pain and right arm numbness, right ankle pain and low back pain radiating to the right leg were improving with physical therapy and chiropractic treatment, although his right shoulder pain was not improving. (Id.)  Dr. Kim noted diminished abduction (155/180), flexion (160/180), external rotation (60/90) and extension to the right shoulder (50/90), compared to the left shoulder, and recommended continued physical therapy, orthopedic follow ups and Motrin as needed.  (Id. at 164–65).

Kim also saw Dr. Daniel Yoo following the 2013 car accident.  (See ECF No. 52-3 at 29). According to an addendum report dated June 22, 2020, Dr. Yoo noted that a right shoulder MRI following the 2013 Accident "showed no evidence of rotator cuff tear and no evidence of labral tear[,]" and Kim's right shoulder was "doing well" prior to the 2015 Accident.  (Id.)  Dr. Yoo therefore concluded that "within a reasonable degree of medical probability, the anterior labral tear was due to the second motor vehicle accident on October 16, 2015."  (Id.)

B.  **Procedural Background**

On February 16, 2018, Kim filed a summons and complaint in Westchester County Supreme Court.  Kim v. Stewart, No. 52275/2018 (Sup. Ct. Westchester Cnty.) (NYSECF No. 1). Defendants filed a Notice of Removal on March 20, 2018.  (ECF No. 1).  On August 10, 2018, the parties consented to have a magistrate judge, then the Honorable Henry B. Pitman, conduct all proceedings.  (ECF No. 16).  On October 2, 2019, this action was reassigned to the undersigned. (Minute entry, Oct. 2, 2019).

On May 8, 2020, Defendants filed the Motion.  (ECF No. 47).  Plaintiff filed an opposition on June 26, 2020 (ECF No. 52), and Defendants filed a reply on July 21, 2020.  (ECF No. 55).

### III. <u>DISCUSSION</u>

**A.  <u>Legal Standards</u>**

      **1.  <u>Motions for summary judgment</u>**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Darnell v. Pineiro</u>, 849 F.3d 17, 22 (2d Cir. 2017); <u>Byrd v. City of New York</u>, No. 17 Civ. 2166 (AJP), 2018 WL 259316, at *3 (S.D.N.Y. Jan. 2, 2018).  "On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists," and if the movant satisfies that burden, "the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial,' . . . and to present such evidence that would allow a jury to find in his favor."  <u>Blue v. City of New York</u>, No. 14 Civ. 7836 (VSB), 2018 WL 1136613, at *5 (S.D.N.Y. Mar. 1, 2018) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).

Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002); <u>see</u> <u>Byrd</u>, 2018 WL 259316, at *4 ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.").

## 2.  New York Insurance Law § 5102(d)

New York's "No-Fault" Insurance Law limits "unnecessary burdens" on the courts by permitting only claimants who have suffered a "serious injury" to file liability claims for personal injury losses that exceed $50,000.  Abdulazeez v. Depazarce, No. 17 Civ. 7415 (NRB), 2020 WL 104990 at *1 n.1 (S.D.N.Y. Jan. 9, 2020) (describing the background of New York's No-Fault Law and its statutory requirements) (citing N.Y. Ins. Law §§ 5101–09); see also Licari v. Elliot, 57 N.Y.2d 230, 234–36 (1982) (describing the legislative history and purpose of the No-Fault Law: "[t]acit in this legislative enactment is that any injury not falling within the new definition of serious injury is minor and a trial by jury is not permitted under the no-fault system.")

Under Section 5102(d), a "serious injury" is an injury that results in:

[1] death; [2] dismemberment; [3] significant disfigurement; [4] a fracture; [5] loss of a fetus; [6] permanent loss of use of a body organ, member, function or system; [7] permanent consequential limitation of use of a body organ or member; [8] significant limitation of use of a body function or system; or [9] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment [hereafter, the "90/180 Category"].

N.Y. Ins. Law § 5102(d) (McKinney).  As described further at § III(B)(1), Plaintiffs rely on the sixth, seventh, eighth, and ninth categories of "serious injury."  (ECF No. 52 at 5).

Whether a plaintiff's claimed injury is "serious" under § 5102(d) is a threshold legal question for the Court to decide.  Licari, 57 N.Y.2d at 237.  "[O]n summary judgment, a defendant must establish a prima facie case that plaintiff did not sustain a 'serious injury' within the meaning of [§] 5102(d) . . . Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that he sustained a serious injury."  Yong Qin Luo v. Mikel, 625 F.3d 772, 777 (2d

Cir. 2010) (per curiam) (quoting <u>Barth v. Harris</u>, No. 00 Civ. 1658 (CM), 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)).  To meet his burden, a plaintiff must present objective proof of injury, rather than mere subjective complaints of pain, and may substantiate a claim of serious injury with "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion," or an expert's qualitative assessment that "has an objective basis and compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function, or system." <u>Yong Qin Luo</u>, 625 F.3d at 777 (quoting <u>Toure v. Avis Rent A Car Sys. Inc.</u>, 98 N.Y.2d 345, 350 (2002)).  While "[t]here is no set percentage for determining whether a restricted range of motion establishes a permanent consequential or significant limitation, [] courts in New York 'have generally found that a limitation of twenty percent or more is significant for summary judgment purposes.'" <u>Oz v. Lorowitz</u>, No. 09 Civ. 5532 (LAP), 2012 WL 4560460, at *4 (S.D.N.Y. Sept. 30, 2012) (quoting <u>Hodder v. United States</u>, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004).

Under the 90/180 Category, "the words 'substantially all' should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." <u>Licari</u>, 57 N.Y.2d at 236.  A plaintiff's inability to work is sufficient alone to make out a <u>prima facie</u> 90/180 Category claim, <u>see</u> <u>Mercado v. Lee</u>, No. 04 Civ. 7166 (PGG), 2008 WL 4963985, at *5 (S.D.N.Y. Nov. 21, 2008), provided that it is substantiated by objective medical evidence.  <u>Jackson v. New York City Trans. Auth.</u>, 273 A.D.2d 200, 201 (2000).

Once a plaintiff has set forth such evidence, "[a]s long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" <u>Rivera v. United</u>

States, No. 10 Civ. 5767 (MHD), 2012 WL 3132667 at *10 (S.D.N.Y. July 31, 2012) (quoting

Nasrallah v. Helio De, No. 96 Civ. 8727 (SS), 1998 WL 152568, at *8 (S.D.N.Y. Apr. 2, 1998)).

Finally, "a plaintiff is required to present competent, nonconclusory expert evidence

sufficient to support a finding, not only that the alleged injury is 'serious' within the meaning of

[§] 5102(d), but also that the injury was proximately caused by the accident at issue." Carter v.

Full Serv., Inc., 29 A.D.3d 342, 344 (2006); see also Arenes v. Mercedes Benz Credit Corp., No. 03-

CV-5810 (NG) (MDG), 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006).

### B. Application

#### 1. The parties' arguments

Defendants move for summary judgment on the grounds that Kim did not suffer a serious

injury under any category of injury in § 5102(d), or, in the alternative, that his injuries were

caused by the 2013 Accident, not the 2015 Accident. (ECF No. 47). Defendants argue that the

"permanent loss of use," "permanent consequential limitation," and "significant limitations of

use" categories of injury are not established; Defendants base their arguments on the findings of

Dr. Passick, who determined that Kim had no lasting physical impairments to any part of his body,

as well as Dr. Greenfield, who deemed Kim's injuries to be degenerative and chronic and

therefore not causally related to the 2015 Accident. (ECF Nos. 47 at 15–16; 55 at 7–8).

Defendants characterize as "self-serving" Dr. Yoo's addendum report, which, according to

Defendants, was "tailored specifically to overcome the strictures of [§ 5102(d)][.]" (ECF No. 55

at 6). Finally, Defendants argue that the 90/180 Category is not established where Kim merely

testified that he missed three months of work. (ECF Nos. 47 at 17, 55 at 8–10).

In opposition, Kim argues that material questions of fact preclude summary judgment, and that he suffered a "serious injury" under four of the categories in § 5102(d): permanent loss of use of a body organ, member, or function; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function; and the 90/180 Category. (ECF No. 52 at 5).

In particular, Kim identifies as permanent and serious (i) his right shoulder injury with associated loss of range of motion as documented by Dr. Yoo, and (ii) the traumatic brain injury indicated in the 2018 MRI study by Dr. Hussman and further documented by Dr. Golzad. (ECF No. 52 at 17–20). Kim argues that Defendants failed to meet their prima facie burden as to his brain injuries because they failed to submit any expert report rebutting or addressing his brain injuries. (Id. at 9). Kim also questions Dr. Passick's methodology and testing methods, and argues the Court should assign no weight to Dr. Greenfield's radiological findings concerning his shoulder in light of Dr. Greenfield's concession that it was "technically limited study, degraded by [low] signal-to-noise, resulting in suboptimal resolution." (Id. at 7) (quoting ECF No. 47 at 173). Moreover, Kim argues that the experts Defendants rely on contradict one another, raising a triable issue concerning causation. Specifically, while Dr. Passick found that Kim had no orthopedic disability (see ECF No. 47 at 181), Dr. Greenfield identified physical impairments including degenerative disc disease and bulging discs to the lumbar spine, and chronic tendinosis of the supraspinatus tendon with trace fluid in the subacromion/subdeltoid bursa to the shoulder, but deemed these findings chronic and degenerative, not attributable to the 2015 Accident. (ECF No. 52 at 8–9) (citing ECF No. 47 at 167–81).

**2.** **Questions of fact concerning causation and serious injury under § 5102(d) preclude summary judgment.**

For purposes of the Motion, the Court accepts that Defendants, through the reports of Drs. Passick and Greenfield, have met their initial burden of demonstrating that Kim's injuries were not serious.  See Abdulazeez, 2020 WL 104990, at *6–7 (assuming that defendants met their initial burden to establish prima facie case that accident did not cause plaintiff's injuries, but finding that triable issues of fact arising from plaintiff's treating physician's report and testimony precluded summary judgment as to causation).  The Court finds, however, that Kim has introduced sufficient objective evidence of a "permanent consequential limitation" and of a "significant limitation of use" concerning his right shoulder and brain injuries to preclude summary judgment.

First, Kim has demonstrated, through Dr. Yoo's reports, evidence of significant limitations to the range of motion of his right shoulder causally connected to the 2015 Accident.  Dr. Yoo documented on May 9, 2019, more than three years following the 2015 Accident, limitations greater than twenty percent to Kim's forward shoulder elevation (143 degrees in comparison to 180 degrees) and to external rotation (37 degrees compared to 90 degrees).  (ECF No. 52-3 at 9, 29).  These limitations are "significant" for purposes of summary judgment, especially in conjunction with Dr. Yoo's conclusions that Kim will have permanent right shoulder pain, increased with motion and activity, and will be prone to developing degenerative joint disease. (Id. at 11); Oz, 2012 WL 4560460, at *4–6 (denying summary judgment where plaintiff lost twenty-degrees range of motion in his cervical spine and suffered permanent herniated discs); see Byrne v. Oester Trucking, Inc., 386 F. Supp. 2d 386, 393 (S.D.N.Y. 2005) (finding a question of fact concerning serious injury where plaintiff's doctor testified that his ability to tilt to the left

was diminished by 25–30% manifesting in difficulty climbing and bending).  Having examined Kim both after the 2013 Accident and after the 2015 Accident, and having reviewed MRIs after each, Dr. Yoo concluded that Kim's injuries were permanent, could not be resolved with further medical interventions and were caused by the 2015 Accident.  (See ECF No. 52-3 at 11, 29).  Based on this opinion, in conjunction with the "results of MRI and range of motion studies, as well as the sworn affidavit of [his] treating physician[,]" the Court finds that Kim has demonstrated a genuine issue of material fact whether he suffered a permanent consequential limitation of use of his body organ or member.  Gonzalez v. Butrago, No. 00 Civ. 5749 (NRB), 2001 WL 461009, at *1 (S.D.N.Y. May 1, 2001).

The Court is unpersuaded by Defendants' argument that Dr. Yoo's 2020 addendum report is "self-serving" and "tailored specifically" to defeat summary judgment.  (ECF No. 55 at 6).  Fundamentally, the fact that the parties submitted "contradicting medical affirmations . . . in connection with this [M]otion merely establish[es] a 'battle of the experts[]'" that underscores the conclusion that Kim has presented sufficient evidence to raise a genuine issue of material fact.  Klein v. Goldfarb, 03 Civ. 874 (DLC), 2004 WL 551219, at *1 (S.D.N.Y. Mar. 22, 2004) (denying summary judgment and ordering the parties to prepare for trial).  Defendants, in effect, ask the Court to make a credibility determination and disregard certain evidence, but it is well established that "[a]ssessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment."  Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)).

Second, the Court concludes that summary judgment is improper given the undisputed evidence of Kim's traumatic brain injury and cognitive deficits resulting from the 2015 Accident. Dr. Hussman in 2018 observed "significant bilateral cortical atrophy within the right medial orbitofrontal region" which he noted was "most compatible with traumatic injury." (ECF No. 52-8 at 8). Testing revealed a decline in cognitive functioning and Kim was diagnosed by Dr. Golzad with mild traumatic brain injury with post-concussion syndrome, persistent headaches, mood disorder, memory and cognitive problems. (Id. at 10–11). Defendants do not directly address these findings, and only dispute causation generally, arguing that Kim "sustain[ed] injury to the same exact body parts" in the 2013 Accident. (ECF No. 55 at 12). To the contrary, Dr. Kim's reports following the 2013 Accident – which are among Defendants' exhibits – are devoid of neurological complaints or deficits. (ECF No. 47 at 160–65).

Finally, with respect to the 90/180 Category, Kim testified that following the 2015 Accident he was unable to work for three months while he was undergoing treatment. (ECF No. 47 at 78:15–79:10). Defendants counter that this is a "dubious claim." (Id. at 17). While the Court makes no determination as to Kim's credibility or veracity, see Simpson, 793 F.3d at 265, there is a triable issue of fact as to whether he suffered a serious injury under the 90/180 Category based on this testimony in conjunction with the physical limitations set forth by Kim's doctors. See Williams v. Elzy, No. 00 Civ. 5382 (HBP), 2003 WL 22208349 at *9–10 (S.D.N.Y. Sept. 23, 2003) (denying summary judgment as to 90/180 Category where plaintiff testified in her deposition that she did not return to work for three months, and when she did return, she worked less, and was limited in strenuous activities); compare Licari, 57 N.Y.2d at 238 (finding no serious injury under the 90/180 Category where the plaintiff returned to work 24 days after the accident

and worked twelve-hour days, six days per week driving a taxi); Gaddy v. Eyler, 79 N.Y.2d 955, 958 (1992) (finding no serious injury where plaintiff returned to normal activities after missing two days of work).   Defendants also fail to disprove this claim, because their medical reports speak only to Kim's condition several years after the 2015 Accident, "not [Kim's] condition during the six months immediately after the accident."   Baytsayeva v. Shapiro, 868 F. Supp. 2d 6, 24 (E.D.N.Y. 2012) (quoting Quinones v. Ksieniewicz, 80 A.D.3d 506 (2011) ("[D]efendants failed to establish prima facie that plaintiff did not sustain [the 90/180 Category]" where "[t]he reports of defendants' medical experts were based on examinations of plaintiff conducted nearly two years after the subject accident, and addressed plaintiff's condition as of the time of the examination, not during the six months immediately after the accident.")).

## IV. CONCLUSION

For the reasons set forth above, the Motion is DENIED.

The parties shall file a Joint Pretrial Order and other pretrial filings in accordance with § IV of the Court's Individual Practices in Civil Cases by **Friday, April 23, 2021**.   A final pretrial conference is scheduled for **Thursday, May 13, 2021 at 10:00 am** on the Court's conference line. The parties are directed to call: (866) 390-1828; access code: 380-9799, at the scheduled time.

The Clerk of Court is respectfully directed to close the Motion at ECF No. 47.


Dated:        New York, New York
              March 23, 2021


SARAH L. CAVE
United States Magistrate Judge